ORIGINAL

1  JERRY Y. FONG, ESQ. (SBN 99673)
   CAREY & CAREY
2  706 COWPER STREET
   P.O. BOX 1040
3  PALO ALTO, CA 94302-1040
   650/328-5510
4  650/853-3632 fax

5  Attorneys for Plaintiff CHRIS YIU

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  CHRIS YIU and LISA CHAN          )   CASE NO.:  C 08-01051 PVT
                                     )
12                                   )   MEMORANDUM IN SUPPORT OF
          Plaintiffs,                )   APPLICATION FOR TEMPORARY
13                                   )   RESTRAINING ORDER AND
    vs.                              )   PRELIMINARY INJUNCTION
14                                   )
    UNITED STATES OF AMERICA, and    )
15  FEDERICO ROCHA, United States    )
    Marshal,                         )
16                                   )
          Defendants.                )
17                                   )

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF CONTENTS

2

**Page**

3

I.     INTRODUCTION                                                                          1
4
II.    STATEMENT OF RELEVANT FACTS                                          1
5
III.   ARGUMENT                                                                              2
6
A.     THE STANDARDS FOR INJUNCTIVE RELIEF ARE SATISFIED     2
7
B.     CHRIS YIU IS ENTITLED TO CHALLENGE THE RESTITUTION
8      ORDER BECAUSE IT IMPACTS HIS PROPERTY RIGHTS              4
9
C.     THE RESTITUTION AWARD WAS NOT PROPERLY COMPUTED    4
10
       1.    MICROSOFT HAD PREVIOUSLY AGREED TO, AND OBTAINED
             A CIVIL JUDGMENT FOR ITS PRE-1999 DAMAGES              5
11
       2.    THE GOVERNMENT SOUGHT AND OBTAINED A
12           RESTITUTION ORDER GRANTING MICROSOFT A SECOND
             RECOVERY FOR ITS PRE-1999 LOSSES                          6
13
       3.    THE GOVERNMENT DID NOT OFFER ANY EVIDENCE TO
14           SHOW MICROSOFT'S "ACTUAL LOSS" AS THE VWPA REQUIRES  6
15
       4.    PROPER COMPUTATION OF MICROSOFT'S ACTUAL LOSS
             REQUIRES A EVIDENCE BASED ON ECONOMIC REALITY          7
16
       5.    THE REDUCTION IN THE AMOUNT OF MICROSOFT'S
17           RESTITUTION WAS UNSUPPORTED BY *ANY* EVIDENCE          8
18
       6.    PREDICATING MICROSOFT'S LOSSES AND
             RESTITUTION ON SPECULATION WAS UNLAWFUL                 8
19
D.     MICROSOFT'S OWN ACTIONS ARE THE ONLY EVIDENCE OF ITS
20     ACTUAL LOSSES AND PROPER AMOUNT OF ITS RESTITUTION       9
21
E.     RESTITUTION HAS BEEN SATISFIED AND
       THE EXECUTION SALE SHOULD BE ENJOINED                     9
22
23
IV.    THE SLIDING SCALE OF HARM AND
       LIKELIHOOD OF SUCCESS FAVORS YIU                          10
24
V.     THE CIRCUMSTANCES WARRANT ISSUANCE
       OF A TRO WITHOUT SECURITY                                 10
25
VI.    CONCLUSION                                                11
26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Apple Computer, Inc. vs. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir.1984)     3

5

*Brown Jordan International, Inc. vs. Mind's Eye Interiors, Inc.*,
      236 F.Supp.2d 1152 (D.Hawai'i 2002)     2

6

7     *Fuentes vs. Shevin*, 407 U.S. 67 (1972)     4

8     *Goldies' Bookstore, Inc. v. Superior Court of State of Cal.*,
      739 F.2d 466 (9th Cir.1984)     3

9

*Hamdi vs. Rumsfeld*, 542 U.S. 507 (2004)     3, 4

10

*Lockheed Missile & Space Co., Inc. vs. Hughes Aircraft* Co.,
      887 F.Supp. 1320 (N.D.Cal.1995)     2

11

12    *Microsoft Corp. vs. Chan et al.*, Case No. 98-20178 JF (N.D.Cal.)     1

13    *National Union Fire Ins. vs Greene*, 985 P.2d 590 (Ariz. App. 1999)     3, 4

14    *Palmer vs. IRS*, 1986 WL 10894 (D.Idaho 1986),
      reported at 58 A.F.T.R.2d 56-5946 and 86-2 USTC ¶8656     10, 11

15

*Roe vs. Anderson*, 134 F.3d 1400 (9th Cir.1998)     2, 10

16

*Sundance Land Corp. vs. Community First Fed. S.&L. Ass'n*,
      840 F.2d 653 (9th Cir. 1986)     3, 10

17

18    *U.S. vs. Chalupnik*, __ F.3d __, 2008 WL 268997 (8th Cir. Feb. 1, 2008)     7

19    *U.S. vs. Cienfuegos*, 462 F.3d 1160, 1168-69 (9th Cir. 2006)     9

20    *U.S. vs. Gamma Tech Industries, Inc.* 265 F.3d 917 (9th Cir. 2001)     6

21    *U.S. vs. Gaytan*, 342 F.3d 1010 (9th Cir. 2003)     6

22    *U.S. vs. Hudson* 483 F.3d 707 (10th Cir. 2007)     7, 8

23    *U.S. vs. Rodrigues*, 229 F.3d 842 (9th Cir. 2000)     6, 7

24    **Statutes and Rules**

25          Title 18 U.S.C.
            sec. 3664     3, 6, 9

26

            F. R. Civ. P.
            Rule 65     10

27

28

1  *Treatises and Other Authorities*

2       Schwarzer, *et al.*, California Practice Guide:
         Federal Civil Procedure Before Trial ¶13:56.3 (The Rutter Group 2008)          3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.

INTRODUCTION

Pending trial, plaintiff Chris Yiu (Yiu) seeks a temporary restraining order and preliminary injunction barring the judicial sale of real property, located at 44715 Aguilar Terrace, Fremont, California (Residence), by defendant Federico Rocha, United States Marshal for the Northern District of California on behalf of defendant United States of America (Government), which is **presently scheduled for February 26, 2008**. Yiu and Lisa Chan (Chan) make their home in the Residence, which they own as community property.

The basis of the sale is a restitution order against Chan in connection with her conviction for infringement of copyrights owned by Microsoft Corporation (Microsoft). Yiu has been denied a hearing on his challenge to the amount of the restitution, which he contends was improperly computed, is excessive, and has never been established by admissible evidence. Further, Microsoft has previously received restitution of nearly $2 million, which is **four** times the appropriate amount of restitution based on the damages to which Microsoft agreed in its previous civil action against Chan in this court.

II.

STATEMENT OF RELEVANT FACTS

In February 1998, Microsoft sued Chan in this court (C 98-20178 JF – the Microsoft Action) to recover damages for copyright infringement and to obtain injunctive relief against future infringement. Request for Judicial Notice (Req. Jud. Not.), Ex. A.

The Microsoft Action was settled in January 1999 by (1) a stipulation for dismissal of the action (*Id.*, Ex. B), (2) a stipulated injunction against future infringement (*Id.*, Ex. C at its Ex. B) a settlement agreement providing for the payment of $50,000 to Microsoft and a mutual release of all claims prior to January 1999 (*Id.*, Ex. C at its Ex. A), and (3) a stipulation for entry of judgment in the amount of $100,000 in the event of any violation of the injunction (*Id.*, Ex. C at its Ex. B).

If Chan violated the stipulated injunction, Microsoft became entitled to the entry of a money judgment against Chan for $100,000, which the stipulated injunction specifically provided was the amount of Microsoft's damages prior to the execution (January 6, 1999) of the stipulated injunction.

1  *Id.*, Ex. C at it Ex. B, p. 2, ¶8 and p. 4:5-10.

2       Subsequently Chan was indicted and pled guilty in February 2001 to one count of infringing

3  Microsoft's intellectual property. *Id.*, Ex. D. As part of her plea agreement, nearly $2 million was

4  transferred to the court as restitution to Microsoft in March and April 2001. *Id.*, Ex. E, at ¶65.

5       Subsequently, in the Microsoft Action, Microsoft moved for, and obtained, judgment against

6  Chan in January 2002 for $100,000 based on her violation of the stipulated injunction. *Id.*, Ex. F and

7  G. Exhibit B to the stipulated injunction provided that the $100,000 was Microsoft's damages for

8  Chan's activities prior the execution of the stipulation in January 1999. Req. Jud. Not., Ex. C at its

9  Ex. B, p. 4:5-10.

10      Chan's sentence imposed a total restitution obligation of $4,500,000 for the benefit of

11  Microsoft. *Id.*, Ex. H, p. 6.

12      Based on the restitution order, the Government has noticed the sale of the Residence which

13  is owned by Yiu and Chan as community property. *Id.*, Ex. I.

14      Previously, Yiu sought to challenge the amount of the restitution order in Chan's criminal

15  case, but his effort was refused on the ground that he lacked standing to challenge a criminal

16  judgment against another person. *Id.*, Ex. J, p. 28-30. The ruling that he lacked standing was upheld

17  on appeal.

18                                         III.

19                                      ARGUMENT

20  A.    THE STANDARDS FOR INJUNCTIVE RELIEF ARE SATISFIED

21      The standard for issuing a temporary restraining order is the same as that for issuing a

22  preliminary injunction. *Brown Jordan International, Inc. vs. Mind's Eye Interiors, Inc.*, 236

23  F.Supp.2d 1152, 1154 (D.Hawai'i 2002); *Lockheed Missile & Space Co., Inc. vs. Hughes Aircraft*

24  *Co.*, 887 F.Supp. 1320, 1323 (N.D.Cal.1995). In the Ninth Circuit, a party seeking a preliminary

25  injunction must show either (1) a likelihood of success on the merits and the possibility of

26  irreparable injury, or (2) the existence of serious questions going to the merits and the balance of

27  hardships tipping in the movant's favor. *Roe vs. Anderson*, 134 F.3d 1400, 1401-02 (9th Cir.1998);

28  *Apple Computer, Inc. vs. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir.1984). These formulations

1  represent two points on a sliding scale in which the required degree of irreparable harm increases as

2  the probability of success decreases. *Roe*, 134 F.3d at 1402. In this case, **both** (1) and (2) exist.

3  1.      Due process entitles Yiu to a hearing on his challenge to the judgment which is the basis of

4  the execution sale. *Hamdi vs. Rumsfeld*, 542 U.S. 507, 533 (2004); *National Union Fire Ins. vs*

5  *Greene*, 985 P.2d 590, 595-96 (Ariz. App. 1999).

6  2.      Yiu is likely to prevail on his claim that the restitution order is not supported by the

7  preponderance of evidence required by 18 U.S.C., sec. 3664(e) because (1) the Government has

8  admitted that it has no evidence which demonstrates the number of sales lost by Microsoft and their

9  dollar value (Req. Jud. Not., Ex. K, 17:18-18:13); and Microsoft's own evidence demonstrates that

10 the nearly $2 million in restitution which it received in 2001 (Ex. E, at ¶65) is more than **four times**

11 its actual losses. Req. Jud. Not., Ex. C at its Ex. B, p. 2, ¶8 and p. 4:5-10; Req. Jud. Not. Ex. F, G.

12 3.      Irreparable injury is established by the imminent execution sale of the Residence and the

13 plaintiffs interest in it on February 26, 2008. Because real property is unique, damages are

14 inadequate and the likelihood of irreparable injury exists. *Sundance Land Corp. vs. Community First*

15 *Fed. S.&L. Ass'n*, 840 F.2d 653, 661 (9th Cir. 1986); Schwarzer, *et al.*, California Practice Guide:

16 Federal Civil Procedure Before Trial ¶13:56.3 (The Rutter Group 2008).

17        In addition, the denial of Yiu's due process right to a hearing is an irreparable injury. "An

18 alleged constitutional infringement will often alone constitute irreparable harm." *Goldies'*

19 *Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir.1984).

20 4.      Serious questions going to merits of the legality of the amount of restitution are present as

21 demonstrated by the evidence, cited *supra*, showing the Government had no evidence to determine

22 Microsoft's lost sales and their value, and Microsoft's own evidence and admissions show that it has

23 already received **four** times its actual losses.

24 5.      Finally, the balance of hardships clearly tips the scale in favor of Yiu. The sale of the

25 Residence is not just unique real property; it is Yiu's home. On the other hand, any delay caused by

26 granting injunctive relief will be of *de minimis* impact on the Government. If it ultimately prevails,

27 then it will still be able to sell the Residence.

28

B.    CHRIS YIU IS ENTITLED TO CHALLENGE THE RESTITUTION ORDER BECAUSE IT IMPACTS HIS PROPERTY RIGHTS

By executing on the Residence, the Government seeks to deprive Chris Yiu of his community property interest without allowing him a hearing on the issues he raises concerning the legality and fairness of the restitution levy imposed on his community property.

"No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const., 5th Amend. The requirements of Constitutional grant were repeated in

"For more than a century, the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' [Citations omitted.] These essential constitutional promises may not be eroded." *Hamdi vs. Rumsfeld*, 542 U.S. 507, 533 (2004).

It is significant that the *Hamdi* decision quoted *Fuentes vs. Shevin*, 407 U.S. 67, 80 (1972), a case, like the present, which forbade the enforcement of judicial process against even a mere possessory interest in private property without a hearing. *Id.* at 407 U.S. 93.

Not only does Yiu have an ownership interest in the Residence, he has personally paid all of the trust deed payments, property taxes, and insurance premiums for the property from his own earnings since it was purchased in 1998.

A spouse holding a community property interest in property, which is being subjected to enforcement of a judgment against the other spouse alone, has a constitutional right to "the opportunity to be heard at a meaningful time and in a meaningful manner" to challenge the judgment. *National Union Fire Ins. vs Greene, supra*, 985 P.2d 590, 595-96.[1]

The refusal of the criminal court to hear Yiu's challenge to the amount of restitution effectively denied him the due process required by the *Fuentes vs. Shevin* decision. Req. Jud. Not., Ex. J, p. 28-30.

C.    THE RESTITUTION AWARD WAS NOT PROPERLY COMPUTED

The Government has not alleged any participation by Yiu in Chan's infringement actions,

---

[1]The only California case discussing this point is to the same effect, but is unreported. (*Roman vs. Griffin*, 2004 WL 2712404).

1  nor has it claimed that he benefitted from her actions.  Neither has the Government disputed that Yiu

2  made all payments since 1998 from his own earnings on the trust deed loan, property taxes, and

3  insurance.  The restitution order against Chan is the sole basis of the writ of execution which the

4  Government seeks to levy against the Residence.

          1.      MICROSOFT HAD PREVIOUSLY AGREED TO, AND
                   OBTAINED, A CIVIL JUDGMENT FOR ITS PRE-1999 DAMAGES

The stipulated injunction (Req. Jud. Not., Ex. C at its Ex. B)  provided as follows:

> "2. Money Judgment
> Defendants hereby stipulate that a money judgment of $100,000,00 in the above-entitled action shall be entered against the named Defendants, and each of them, in the event that it is determined that Defendants have violated any term or terms of the Injunction. Whether a violation of any term or terms of the Injunction, occurred will be adjudicated by the United States District Court for the Northern District of California upon motion of Microsoft.
> "It is expressly understood and agreed that any act giving rise to damages subsequent to the date of execution of this Stipulation, including any act or acts adjudged to be in violation of the Injunction, may give rise to a claim for damages by Microsoft that is separate and distinct from the damages referenced herein."

Page 4 of Ex. B to the stipulated injunction, which is Req. Jud. Not. Ex. C, was a form of order to be entered if Chan violated the stipulated injunction.  The form of order provided as follows:

> "The Court finds that defendants have violated a term or terms of the Stipulation and Order re: 'Permanent Injunction (the "Injunction") entered by the Court on _____, 1998. Therefore, in accordance with the terms of the above Stipulation,
> "IT IS HEREBY ORDERED that Defendants, and each of them, are jointly and severally liable to Microsoft in the amount of $100,000.00. ***This amount is deemed to be the amount of damages to have been sustained by Microsoft on or before the date of execution of this Stipulation*** and is separate and distinct from any claim for damages by Microsoft arising from any act giving rise to damages subsequent to the date of execution of this Stipulation, including for violation of the Injunction. [Emphasis added.]"

The caption on these documents show they were prepared by Microsoft's lawyers (the former McCutchen, Doyle, Brown, & Enersen, now Bingham McCutchen), and they clearly provide, Microsoft agreed that $100,000 was the amount of its damages for Chan's activities prior to the execution of the stipulation, which Microsoft executed on January 6, 1999. Req. Jud. Not., Ex. C at its Ex. B, p. 3.

Further Microsoft ratified these terms by submitting the stipulation for approval by the Court, which was obtained on January 20, 1999 (Req. Jud. Not., Ex. B, p. 3). and by moving for entry of

1   the $100,000 judgment, which was entered on January 29. 2002 (Req. Jud. Not., Ex. F and G).

2   Thus, the only losses for which Microsoft which remained to be determined at Chan's

3   sentencing hearing were those for the period from January 6, 1999 until Chan was indicted and taken

4   into custody in June 2000.

5       2.    THE GOVERNMENT SOUGHT AND OBTAINED A
       RESTITUTION ORDER GRANTING MICROSOFT A SECOND
6                RECOVERY FOR ITS PRE-1999 LOSSES

7

8   As demonstrated *supra*, Microsoft agreed that its pre-January 1999 damages were $100,000,

9   and twice ratified that agreement. Judgment for $100,000 was not sought until December 2001 –

10   a year and one-half after Chan was charged. Microsoft had more than sufficient time to determine

11   that $100,000 accurately represented its pre-1999 losses, before it requested and obtained judgment.

12   Despite these actions, Microsoft submitted data to the Government to again recover its pre-

13   January 1999 damages, and the Government included that information as evidence of the appropriate

14   amount of restitution. Req. Jud. Not., Ex. E, at ¶65.

15       3.    THE GOVERNMENT DID NOT OFFER ANY EVIDENCE TO
       SHOW MICROSOFT'S "ACTUAL LOSS" AS THE VWPA REQUIRES

16   In addition to the impropriety of making a redundant pre-1999 claim for losses, Microsoft

17   supplied, the Government submitted, and the restitution order is based upon data which does not

18   comport with the recognized standards for determining restitution in circumstances such as Chan's.

19   The Ninth Circuit has held restitution is identical with actual loss.

20   "In enacting the [Victim and Witness Protection Act (VWPA)], Congress intended
       to authorize an award of restitution only for the loss caused by the specific conduct
21   that is the basis of the offense of conviction. Accordingly, the VWPA only
       authorizes **restitution up to the amount actually lost by the victims**. Restitution
22   is not available for consequential losses, or other losses too remote from the offense
       of conviction. [Emphasis added, citations and internal quotations omitted.]" *U.S.*
23   *vs. Rodrigues*, 229 F.3d 842, 845 (9th Cir. 2000).[2]

24   To satisfy its burden of proof under 18 U.S.C. sec. 3664(e), the Government submitted

25   evidence for restitution premised on the theory that Microsoft would have sold its software at its

26   

27       [2]This rule was also stated and applied in other decisions, including *U.S. vs. Gaytan*, 342 F.3d
28   1010, 1011 (9th Cir. 2003), and *U.S. vs. Gamma Tech Industries, Inc.* 265 F.3d 917, 926 (9th Cir.
       2001). The latter case also reaffirmed the rule that waiver of the right to appeal does not bar an
       attack on an order in violation of applicable restitution statutes. 265 F.3d at 923, fn. 5.

1 retail prices to everyone of Chan's buyers.

2   "The IRS and Microsoft determined that the value of the infringing items sold to the
    public and to undercover agents was $12,999,720. However for restitution purposes,
3   the amount is limited by the items sold to the public whereby Microsoft was
    impacted - this amount was $10,188,935.86." Req. Jud. Not., Ex. E, at ¶65."
4

5   The Government then advocated for restitution in an amount based on that evidence. *Id.*, Ex.
6 L, 9:14-10:2.

7   The amount asserted by the Government blatantly ignores the VWPA requirement that
8 restitution is determined by the **actual loss** caused by the criminal conduct, and not by the value of
9 the property even at the "lowest distributor price [of Microsoft]" for the software sold by Chan.

10   Under the sentencing guidelines, the value method advocated by the Government is
11 appropriate for calculating the "infringement amount" for use in determining the level of offense.
12 However, as *U.S. vs. Rodrigues*, quoted *supra*, demonstrates, restitution is determined under the
13 VWPA and equates with "**actual loss**" incurred by the victim.

14   The evidence did not even attempt to address the "actual loss" in sales by Microsoft either
15 in number or in value. In sum, the Government had no evidence to offer on the issues required by
16 the VWPA.

17   4.   PROPER COMPUTATION OF MICROSOFT'S ACTUAL LOSS
        REQUIRES A EVIDENCE BASED ON ECONOMIC REALITY
18

19   Although the issue of the proper method for calculating losses for restitution in a conviction
20 for copyright infringement apparently has not been considered in the Ninth Circuit, other circuits
21 have considered the issue and rejected the theory the copyright holder suffered losses in amount
22 equal to the sales made by the infringer as valued at the copyright owner's prices. *U.S. vs. Hudson*
23 483 F.3d 707, 710 (10th Cir. 2007); *U.S. vs. Chalupnik*, _ F.3d _, 2008 WL 268997 (8th Cir. Feb.
24 1, 2008).

25   The *Hudson* decision began its consideration of the restitution issue by stating:

26   "As an initial matter, we are very skeptical of the implicit suggestion that BFS's
    agreement to purchase 537 copies of the software for a total price of less than
27   $86,000 proves that BFS would have agreed to purchase the same number of copies
    from Microsoft for more than $321,000." 483 F.3d at 710.
28

1    The *Hudson* court was addressing the economic reality that buyers of low price counterfeit

2 software would not necessarily be buyers of the same software at the much higher retail price of the

3 copyright owner. This reality is demonstrated by the supply/demand curve of Economics 101 which

4 illustrates that demand expands as price decreases and contracts as price increases. In addition,

5 although Microsoft possessed a monopoly market share at the time of the infringement, there were,

6 and are, other operating systems and other office utility programs available to potential buyers for

7 a lesser price.

8    Microsoft obviously recognized this issue when it agreed in the Microsoft Action that its pre-

9 1999 losses from Chan's infringement were $100,000, and not the $2,080,702 which the

10 Government sought for the same period. The $2,080,702, of course, represented the number of sales

11 realized by Chan multiplied by Microsoft's prices.

12    At Chan's sentencing hearing, the Government also acknowledged this very real problem in

13 their proof, and admitted they had no evidence either to support a finding of sales lost by Microsoft

14 and their value, or to establish what the demand curve might be for determining the true amount of

15 restitution. Req. Jud. Not., Ex. K at 17:18-18:13. The Government also admitted an adjustment in

16 the amount of restitution they advocated was probably appropriate. *Ibid.* The problem was the

17 Government had no idea what the adjustment should be. *Ibid.*

18    5.    THE REDUCTION IN THE AMOUNT OF MICROSOFT'S
       RESTITUTION WAS UNSUPPORTED BY *ANY* EVIDENCE

19

20    In recognition of the demand curve problem undercutting the Government's proof, the

21 amount of restitution was reduced from the $10 million requested by the Government to $4.5

22 million.   Req. Jud. Not., Ex. K at 21:11-16; and Ex. H, p. 6.

23    While the reduction was a stab at reality, it obviously was **not supported by any evidence**.

24 *Ibid.* It was, putting it bluntly, a guess.

25    6.    PREDICATING MICROSOFT'S LOSSES AND
       RESTITUTION ON SPECULATION WAS UNLAWFUL

26

27    By its own admission, the Government's proof was based on an improper theory of loss and

28 contrary to economic reality. The attempt to compensate by an adjustment in the Government's

1    claim was simply a speculative guess wholly inadequate to satisfy the requisite burden of proof.  18

2    U.S.C., sec. 3664(e). Predicating losses, and therefore restitution, on speculation is unlawful because

3    it fails to satisfy the Government's preponderance of the evidence burden. *U.S. vs. Cienfuegos*, 462

4    F.3d 1160, 1168-69 (9th Cir. 2006).

5          D.    MICROSOFT'S OWN ACTIONS ARE THE ONLY EVIDENCE OF ITS
              ACTUAL LOSSES AND PROPER AMOUNT OF ITS RESTITUTION
6

7          As shown *supra*, Microsoft agreed that its losses because of Chan's infringement during the

8    period prior to January 1999 were $100,000, and it sought and obtained judgment in this amount.

9    Contradicting this judicial admission, is the Government's "evidence" of Microsoft's losses prior

10   to January 1999 in a total amount of $2,080,702 or more than **twenty times** Microsoft's admitted

11   damages.  Req. Jud. Not., Ex. E at ¶65.

12         Even applying the speculative adjustment to reduce the Govenment's restitution demand for

13   more than $10,000,000 to $4,500,000, or 44% of the Government's demand, the restitution includes

14   an amount (44% of $2,080,702 or $915,508) which is over **nine times** Microsoft's admitted pre-

15   1999 losses.

16         Clearly, the $4,500,000 restitution award should be reduced by the $915,508 to $3,584,492

17   because of Microsoft's earlier admission of its $100,000 damages and its judgment in that amount.

18         The more important question is why the restitution for the period after January 1999 should

19   not be reduced in the same proportion.  The actual post-1999 Microsoft losses should be in the same

20   ratio to the amount advocated by the Government for post-1999 as $100,000 is to the Government

21   restitution claim for the pre-1999 period.

22         Applying the pre-1999 ratio to the restitution award for post-January 1999 yields a restitution

23   amount of $391,530[3] or total restitution for the entire 1996-June 2000 period of $491,530.

24         E.    RESTITUTION HAS BEEN SATISFIED AND THE EXECUTION
              SALE SHOULD BE ENJOINED
25

26         Since Chan has previously paid restitution in the amount of $1,972,929.77 (*Ibid.*) or **more**

27

───────────────

28         [3]This amount is computed by dividing $100,000 (Microsoft's admitted pre-1999 losses) by
      $915,508 (the pre-1999 losses included in the restitution award) and multiplying $3,584,492 (the
      restitution award for post-1999 losses) by the result.

1    **than four times Microsoft's losses based on its judicial admission**, there is no basis for the

2    execution sale of the Residence and it should be enjoined.

3                                          IV.

4        THE SLIDING SCALE OF HARM AND LIKELIHOOD OF SUCCESS FAVORS YIU

5        As discussed *supra*, entitlement to injunctive relief is judged on a sliding scale where the

6    greater the injury likely to occur in the event injunctive relief is not granted, the lesser must be the

7    showing of a probability of success. *Roe vs. Anderson*, *supra*, 134 F.3d at 1402. Here, Yiu has

8    demonstrated the classic basis for equitable relief – deprivation of real property. Because real

9    property is considered unique, it loss cannot be adequately compensated by damages. *E.g.*, *Sundance*

10   *Land Corp. vs. Community First Fed. S.&L. Ass'n*, *supra*, 840 F.2d 653, 661; *Palmer vs. IRS*, 1986

11   WL 10894 (D.Idaho 1986), reported at 58 A.F.T.R.2d 56-5946 and 86-2 USTC ¶8656.

12       Secondly, the probability of success must at least be described as likely. The Government's

13   basis for sale of the Residence – the restitution judgment – lacks evidentiary support and is

14   contradicted by Microsoft's admission that its pre-1999 losses were only about 10% of what the

15   Government claimed as restitution for the same period. Further, the Government sought and

16   obtained pre-1999 restitution despite the judgment for such losses which had previously been granted

17   in the Microsoft Action. For a party to receive dispensation in equity, it must conduct itself

18   equitably. Seeking a double dip for Microsoft was inequitable.

19                                          V.

20       THE CIRCUMSTANCES WARRANT ISSUANCE OF A TRO WITHOUT SECURITY

21       *Palmer vs. IRS*, *supra*, concerned circumstances very similar to those present here. The IRS

22   seized the Palmer property, which was the family residence, by notice of seizure, but had not taken

23   physical possession. However, the IRS apparently intended to sell the property to satisfy tax

24   liability. Although the plaintiff did not make a showing of the likelihood of success, the Court

25   granted a preliminary injunction barring the sale of the residence pending trial.

26       The court found security, pursuant to rule 65(c), F. R. Civ. P., might possibly be warranted

27   for potential waste and for potential loss of interest, during the period of the injunction, on sales

28   proceeds that might otherwise be realized. The court concluded security was unnecessary. Since

1  the family of the plaintiff trustee resided in property, waste was unlikely.  Further, the amount of

2  possible interest loss was too difficult to determine because the uncertainty of the amount which

3  would be realized by the sale of the house.

4      Parallel circumstances exist with respect to Yiu and the Residence.  The potential loss to the

5  Government would be based on the same two factors, and relief without the need for security is

6  justified on the same grounds.

7                                                    VI.

8                                            CONCLUSION

9      Yiu has satisfied the irreparable injury requirement for injunctive relief by demonstrating that

10  the absence of such relief will result in the loss of his family home.  Under such circumstances, the

11  sliding scale applied in analyzing the right to injunctive requires a lesser showing of the probability

12  of success on the merits.

13      However, Yiu has made a substantial of probable success on the merits.   The evidence he

14  has offered shows that the restitution order against Chan is unlawful.  The Government did not even

15  attempt to present evidence of "actual loss" as required by the VWPA.  Consequently, the amount

16  of restitution is not supported by admissible evidence.  Moreover, the restitution amount is

17  contradicted by evidence of Microsoft's admission that its pre-1999 losses were only $100,000.

18      Because Yiu has made his case for injunctive relief, a temporary restraining order and then

19  a preliminary injunction should be granted.  Security is unnecessary because waste to the Residence

20  is unlikely to occur, and the amount which would be realized by sale as a basis for a lost interest is

21  too uncertain to determine.

22  DATED: February 22, 2008                Respectfully submitted,

23                                          CAREY & CAREY

24

25                                          By JERRY Y. FONG, Attorney for
                                            Plaintiff CHRIS YIU

26

27

28

CHRIS YIU'S EX PARTE APPLICATION FOR TRO & PRELIM INJUNCTION TO ENJOIN 2/26/08 FORECLOSURE